Union Manufacturing Company *v.* Lounsbury.

[NEW YORK GENERAL TERM, May 2, 1864. *Leonard, Clerke* and *Geo. G. Barnard,* Justices.]

---

## THE UNION MANUFACTURING COMPANY *vs.* LOUNSBURY and others.

By a written agreement between the parties, made on the 28th of December, 1848, the plaintiffs sold and assigned to the defendants the right of manufacturing, at their factory in Norwalk, felt cloth of the usual width of broadcloth, by means of a single set of machinery, for the manufacture of which felt cloth the plaintiffs had a patent; they covenanting that the defendants might have and enjoy said right for and during *the unexpired term of the patent, and for and during the term for which the patent should be renewed,* if a renewal should be obtained, for or by the plaintiffs. In consideration of which the defendants agreed to pay to the plaintiff the sum of one cent for each yard of cloth manufactured by them, under and by virtue of the agreement, on the first days of January and July in each and every year, "*during the term or terms aforesaid.*" The first term of the patent had only two years unexpired, at the date of the agreement. It expired in 1850, and the patent was, on the 21st of October of that year, renewed for the term of seven years; and in 1854 it was extended, by act of congress, for fourteen years longer from that date, both extensions being duly assigned to the plaintiffs and obtained for them. The defendants insisted that inasmuch as the act of congress, of July 4, 1836, provides that the benefit of such renewal shall extend to assignees and

grantees of the right to use the thing patented, to the extent of their respective interests therein, and as the act of 1854, extending the patent for fourteen years longer, had a similar provision, they had the right to use it, after the expiration of the first term, without paying any compensation to the plaintiffs, for its use; they being by those acts absolved from the stipulations of the agreement.

*Held* 1. That under and by virtue of the agreement the benefit of the extension of the patent for seven years from October 20, 1850, enured to the defendants.

2. That the defendants having taken and enjoyed the benefit of such extension, and manufactured cloth, under the agreement, until September 24, 1857, the plaintiffs were entitled to one cent per yard on the cloth so manufactured.

3. That the agreement was not annulled, rescinded or abandoned, but continued to be, in all respects, binding upon, and operative as to, the parties, until and after September 24, 1857.

4. That the obligations of the defendants, or the rights of the plaintiffs, under the agreement, were not destoyed or impaired by reason of the extension, or re-issue, of the patent.

5. That the service of a notice upon the defendants, by the plaintiffs, forbidding them (on the ground of an alleged breach of the agreement,) to use or exercise the right granted by the agreement, did not, *ipso facto*, annul the contract.

THE plaintiffs are a Connecticut corporation. The defendants compose the partnership of Lounsbury, Bissell & Co. and are a Connecticut firm. The action was founded upon a contract in the words following: "This agreement, made and entered into on this twenty-eighth day of December, A. D. 1848, between the Union Manufacturing Company of Norwalk, a company duly incorporated by the laws of this state, of the first part, and Clark Bissell, of New Haven, and John D. Lounsbury and Edward C. Bissell, both of said Norwalk, manufacturers and dealers, in company, under the name and firm of Lounsbury, Bissell & Co. of the second part, witnesseth: That the said party of the first part, through and by the directors thereof, thereunto duly authorized, and in consideration of the covenants hereinafter contained, have sold and assigned, and do by these presents bargain, sell, assign, and convey to said parties of the second part, and such other person or persons as may be associated

with them as members of said firm, and conditionally, as hereinafter mentioned, the right of making and manufacturing, at the establishment now occupied by them in said Norwalk, felt cloth of the usual width of broadcloth, by means of a single set of the machinery usually employed in the manufacture of felt cloth, and for the manufacture of which said party of the first part have a patent under the laws of the United States, granted on the 20th day of October, A. D. 1836. And the said party of the first part do hereby covenant and agree with said party of the second part, that they may have and enjoy said right for and during the unexpired term of said patent, and for and during the term for which the same shall be renewed, if a renewal thereof shall be obtained for or by the said party of the first part, subject to the following conditions and limitations, to wit: Said right is to be and enure to said parties of the second part, and those who may be associated with them in said business, and is not to be the subject of voluntary assignment, and shall not be so assigned by them, or either of them, to any other person or persons whatsoever, or be used at any other place, or for more than a single set of machinery; said right is to be used only in the making of finished cloth of a kind different from those now manufactured by said party of the first part, and which will not interfere with the cloths now made by said first party in the market; and to the end that there shall not be any such interference, said right is not to be used for the making of any cloths less finished or more nearly resembling the cloths now made by said first party than the sample hereto attached and marked; and in the event of any disagreement between said parties respecting the quality or character of the cloth made by said party of the second part, the same is to be decided by Eli B. Bennett, Charles C. Betts, and C. J. Gruman, or, in the event of either of them being interested, by the other two, and an umpire chosen by them, and such decision shall be final upon the parties. And upon the breach of either of the aforesaid con-

ditions, said right is to cease and determine, and said party of the second part to be no longer entitled to use or possess the same.

And the said party of the second part receiving said right on the conditions, and subject to the limitations aforesaid, in consideration thereof, do hereby covenant and agree with said party of the first part, that they will pay or cause to be paid to the said party of the first part, the sum of one cent for each and every yard of cloth so made and manufactured, by them under and by virtue of this agreement, said payments to be made semi-annually, on the first days of January and July in each and every year during the term or terms aforesaid; and do further covenant to permit said party of the first part, or its agents or directors, at any time to inspect any such book or books of said party of the second part as may or will show the number of yards of cloth by them manufactured, and to render accurate accounts thereof on said first days of January and July in each year.

As witness our hands, on the day and year above written."

The complaint avers that the defendants, from July 1st, 1852, to September 24th, 1857, manufactured felt cloth, under and in pursuance of the said agreement, in the aggregate to 570,978 yards, for which the plaintiffs claim, at one cent a yard, the sum of $5709.78. The complaint states the quantity manufactured between various dates from 1852 to 1857.

On the 17th October, 1850, the patent was duly extended by the commissioner of patents for seven years, and on the 28th of March, 1854, by congress for fourteen years from that date. The defendants, under the license, continued to manufacture, according to the patent, up to September 24th, 1857, rendering accounts and paying tariff from time to time. Before and during 1854, it was supposed and claimed by the plaintiffs that the defendants had committed a breach of the license agreement by making cloth other than what was specified therein. On the 24th August, 1854, the plain-

tiffs, in consequence of such alleged breach, served 'on the defendants a notice alleging the breach, and forbidding the defendants to use or exercise the right granted by the license, for any purpose whatever. The defendants sent the plaintiffs their promissory note for the tariff, as reserved up to July 1st, 1864, but refused, after the notice just mentioned, to pay the tariff or recognize the right of the plaintiffs to any. The plaintiffs sent back the note in an envelope. But, as already stated, they nevertheless continued to manufacture according to the patent up to September 24th, 1857. The plaintiffs also claimed in the action an account for work done for the defendants, and other considerations than the tariff, to the amount of $857.97. There was due to the plaintiffs in all, on the 1st January, 1859, the sum of $6487.29, against which was a credit of $49.62 to be allowed.

The defendants set up in their answer—1st. That the plaintiffs had not a patent, " meaning thereby only to deny that the plaintiffs were the patentees," and had not a right " to a renewal of such patent, or any legal or equitable interest in such renewal, *material to the matters in difference in this action."* 2d. Admitting that they made felt cloth from 1852 to 1857, they denied that it was made " under and in pursuance" of the license from the plaintiffs. 3d. They admitted rendering accounts, but say it was not under the license. 4th. As a separate defense they say that they were induced to enter into the agreement to pay tariff, after the expiration of the first term of the patent, by a representation of the plaintiffs that they had " by assignments from the patentees their inchoate right to a renewal of said patent," whereas the plaintiffs had no such right by assignment or otherwise, as it remained vested in the patentees, the plaintiffs having no interest therein, and no right to make any contract therefor. 5th. That the defendants bought one set of machinery from the plaintiffs, which they owned when the original patent expired, and they had a right to use it thereafter, by virtue of the act of congress of July 4th, 1836,

" irrespective of any covenant, contract, or assignment whatever." *Therefore,* that part of the agreement with the plaintiffs in which they stipulated to pay tariffs on a renewal was without consideration, and not binding. 6th. That being in the lawful use of the invention when the act of congress aforesaid was passed, renewing the patent for fourteen years, the defendants had a right to continue the use under the statute, and free from any obligations of the license. The defendants on the 1st February, 1854, sent to the plaintiffs an account in which they charge themselves with the tariff they had agreed to pay. On the 2d September, 1854, they wrote to the plaintiffs : " We also credit you with tariff on 64,774 yards from Jan. 1 to July 1, at 1c., $647.74." After the 24th September, 1857, they furnished from their books a statement of the quantity of felt cloth they had manufactured. The plaintiffs regularly charged the defendants with tariffs down to the 24th September, 1857, and there was no settlement between the parties as to tariffs after September 11th, 1854. The action was tried at the New York circuit, before Justice PECKHAM, without a jury. He found, as matters of fact, all that is above stated, and also that the plaintiffs, although they sent the note of August 28th, 1854, " took no step afterward towards rescinding the agreement under which the tariff occurred ;" that the plaintiffs did not procure the agreement from the defendants by misrepresentation or fraud, nor make any misrepresentation or statement except what was contained in the agreement. Also that the allegations as to the balance due, and the considerations for which such balance arose, are correct.

The conclusions of law found by Justice Peckham were as follows :

1st. That the agreement, under which the tariffs were claimed in this action, was binding and valid, and not void or voidable by reason of any alleged misrepresentation or fraud, or because of the law of Connecticut, as existing when it was made.

2d. That under and by virtue of such agreement, the benefit of the extension of the patent therein mentioned, for seven years from the 20th October, 1850, enured to the said defendants.

3d. That, under such agreement, the defendants took and enjoyed the benefit of such extension, and manufactured felt cloth as stipulated in the agreement, until the 24th September, 1857; up to which period the plaintiffs were and are entitled to tariffs on the cloth so manufactured under the agreement.

4th. That said agreement was not annulled, rescinded or abandoned, but continued to be, in all respects, binding upon, and operative as to, the parties thereto, until and after September 24, 1857.

5th. That the obligations of the defendants, or rights of the plaintiffs under the agreement aforesaid, were not destroyed or impaired by reason of the extension or re-issue, or either of them.

6th. That the plaintiffs were entitled to judgment against the defendants, for $6,437.67, with interest from January 1, 1859, to January 21, 1862, at the rate of six per cent per annum, for which amount such judgment was ordered to be entered. From the judgment so entered the defendants appealed.

*Augustus F. Smith,* for the appellants. I. Upon the facts found by the court, the defendants were, by the express terms of their contract, not bound to pay to the plaintiffs any tariff after the expiration of the patent of October 20, 1836. 1. It is settled that the plaintiffs, holding a naked assignment of the patent, had no right to a renewal, and no interest in such renewal after it should be granted. The *right* to a renewal belonged to the patentees, if living, and their personal representatives, if dead. (*Curtis on Patents,* § 118. *Woodworth* v. *Sherman,* 3 *Story's R.* 171. *Wilson* v. *Rosseau,* 4 *How. S. C. R.* 646. 2. It is equally well set-

tled, that the *interest* in the renewal, when granted, belonged to, or perhaps more properly enured exclusively to the benefit of, 1st. The patentee. 2d. Those assignees who were in the use or were purchasers of the patented machine at the time of the renewal. (*Wilson* v. *Rosseau,* 4 *How. S. C. R.* 646. *Simpson* v. *Wilson,* 4 *id.* 709. *Bloomer* v. *McQuewan,* 14 *id.* 539. *Chaffee* v. *The Boston Belting Co.,* 22 *id.* 217, 223.) 3. It follows that the defendants, after the expiration of the original patent, used their machine for the manufacture of felt cloth, by virtue of the 18th section of the act of congress of July 4, 1836, or of the proviso in the act of August 28, 1854, one or both. They did not so use the machine by virtue of any renewal "obtained for or by" the plaintiffs. This is clear, but a reference to page 223 of 22 *Howard,* illustrates the proposition. Judge Clifford, of the supreme court, there says : "Under that provision (the 18th section,) it has been repeatedly held by this court that a party who had purchased a patented machine, and was using it during the original term for which the patent was granted, might continue to use the machine during the extended term. That rule rests upon the doctrine that the purchaser, in using the machine under such circumstances, exercises no rights created by the act of congress, nor does he derive title to it by virtue of the franchise or the exclusive privilege granted to the patentee. When the patented machine rightfully passes to the hands of the purchaser from the patentee or from any other person by him authorized to convey it, the machine is no longer within the limits of the monopoly." (*Chaffee* v. *The Boston Belting Co.,* 22 *How.* 223.) 4. For every purpose then, the rights of the defendants are the same as they would be had the plaintiffs never acquired any interest in the renewal. As against the defendants, they never did acquire any such interest. The rights of the defendants at and after the renewal were given to them by the acts of congress, and were paramount to the rights of the plaintiffs as respected the machine in use by them. From that time they

Union Manufacturing Company *v.* Lounsbury.

never manufactured a yard of felt cloth under and by virtue of the agreement; they manufactured under and by virtue of the acts of congress. 5. Plainly it was the *belief* of the parties that when the renewal should be obtained it would be in the power of the plaintiffs to control the use by the defendants of the machine they had. 6. Plainly it was the *intent* of the parties, apparent upon the face of the instrument, that when the plaintiffs acquired by the renewal the right to control the defendants' use of the machine, they would not exercise that right, but the defendants might, nevertheless, continue the use. 7. The plaintiffs' contract rests in covenant; they covenant that the defendants might use the machine during the renewal, not absolutely, but if a renewal should be obtained for or by them. So that if they had never acquired a right to the renewal, there would be no pretense of a claim for the tariff, although the right of the defendants to use the machine was just as perfect whether the plaintiffs acquired the renewal or whether they did not. 8. On the other hand, the defendants agree to pay on every yard manufactured *"under and by virtue of the agreement,"* and not otherwise. And whether they manufacture "under and by virtue of the agreement," does not depend upon the question whether the defendants have a right to manufacture, for they would have such right whether the renewal was obtained for the patentees and kept by them, or was transferred by them to the plaintiffs. Not a doubt exists that had the plaintiffs never acquired a right to the renewal, no claim could be made against these defendants. Does it alter the case that they acquired only a partial right, to wit, one that excepted the right of the defendants to use their machine? In the first case it would not be pretended that the defendants manufactured "under the agreement." In the second, that they do not, is equally clear. In either case they manufacture under and by virtue of the acts of congress. 9. The plaintiffs are misled by an argument relied upon below; they say, the defendants would not have been within

the protection of the acts of congress had they not acquired the right to use the machine, and that they obtained this by the agreement. True, but if the parties had designed that payment should depend upon this consideration, it was very easy to say so, or to impose the tariff for every yard made *on the machine* instead of that made *under the agreement.* 10. On the contrary, the plaintiffs have found it necessary to aver in their complaint, that the defendants have manufactured "*under and in pursuance of the said agreement,*" and to rest their case upon proof of that averment. Failing in that proof, as they have, they must fail in their action.

II. There was no consideration for a promise to pay the tariff after the expiration of the patent, dated October 20, 1836. 1. A right not *in esse,* and when to come *in esse,* not belonging to a party, cannot be sold by him, and cannot be the foundation of a contract by him, nor the consideration of a contract to him. As is said by the authorities, "A naked possibility, unless coupled with an interest, is not the subject of a sale." (2 *Kent,* 468 *and note, last ed. p.* 641. *Sheppard's Touchstone,* 239. *Bacon's Abridgment, Grant, D* 3. *Calkins* v. *Lockwood,* 16 *Conn.* 285. *Rowan* v. *Sharp's Rifle Co.,* 29 *Conn.* 328. *Swift's Digest,* 186. *Munsell* v. *Lewis,* 4 *Hill,* 635. *Mitchell* v. *Winslow,* 2 *Story's Rep.* 630.) 2. The plaintiffs, at the time of the contract, December 28, 1848, had neither an actual nor a potential interest in the renewal, and could not at law, upon authority nor upon principle, sell the same, nor upon a sale receive a promise to pay for the same. 3. It is true that when such a right comes *in esse* and becomes the property of the seller, a court of equity will enforce the contract of both parties. (*Mitchell* v. *Winslow,* 2 *Story's R.* 630, 639, 644. *Field* v. *Mayor &c. of N. Y.* 2 *Seld.* 179.) But to give the court of equity power, both of these conditions are required, viz. that the right *comes in esse* and *is the property of the seller.* (*Calkins* v. *Lockwood,* 16 *Conn.* 285.

*Rowan* v. *Sharp's Rifle Co.*, 29 *id.* 282.) 4. In this case, though the renewal was granted, it never, as against the defendants, became the property of the plaintiffs. By the very act of renewal, the right of the defendants to use the machine was protected from the renewal. 5. If, then, the defendants had promised to pay a tariff during the renewal, based upon a sale of the renewal not then actually nor potentially the property of the plaintiffs, no action could be maintained upon it at law nor in equity.

III. By accepting the act of March 28, 1854, which by its proviso protected the defendants in the use of their machine, the plaintiffs waived any right they might otherwise have against them. If the defendants had without qualification promised to pay for every yard made after the renewal, and congress had seen fit to grant the renewal with a proviso that the defendants might manufacture without payment, an acceptance of the act would be a waiver of all claims under the contract. Congress have in substance done what is here supposed, and the plaintiffs have accepted the act.

IV. The fact that the defendants paid for two years after their liability ceased, does not furnish any legal ground for enforcing a further payment.

V. If the contract ever had any validity as respects the renewal, the defendants were mere licensees. Unless estopped by the covenants in the license, the licensee may at any time deny the title of the licensor and refuse to pay. The rule of estoppel applicable to landlord and tenant does not apply. In this case the defendants did refuse to pay after July 1, 1854, and stand upon their statutory rights. (*Curtis on Patents*, §§ 195, 199. *Hayne* v. *Maltby*, 3 *Term R.* 438. *Cross* v. *Huntly*, 13 *Wend.* 386. *Chanter* v. *Leese*, 4 *Meeson & W.* 295. *S. C.* 5 *id.* 698. *Woodworth* v. *Cook*, 2 *Blatchford's R.* 152, 160.)

VI. The revocation of the license of the defendants on

August 28, 1854, was effective, and thereafter no liability existed to pay the tariff. 1. The license was conditional. The contract has the following: "And upon the breach of either of the aforesaid conditions, said right is to cease and determine, and said party of the second part to be no longer entitled to use or possess the same." 2. The defendants broke one of the conditions. 3. The plaintiffs thereupon notified the defendants, in writing, of their election to rescind the agreement, and forbid the defendants from using or exercising any right under the agreement. 4. The defendants did not thereafter pay any tariff, nor recognize the plaintiffs' right thereto. 5. The case of *Woodworth* v. *Cook* establishes the proposition that such a revocation left or remitted the defendants to their rights under the acts of congress, so that continuing the manufacture was no waiver of their rights under the rescission. (2 *Blatchford*, 152, 160.) 6. There is neither principle nor authority for saying that, to make the rescission effective, it was necessary that the plaintiffs should file a bill, or take any other step beyond their written notification. In *Terwilliger* v. *Knapp*, a parol notice was held a rescission when acceded to by the other party, even when the notice was upon an insufficient ground. (2 *E. D. Smith*, 86. *See also The Stamford St. Bt. Co.* v. *Gibbons*, 9 *Wend.* 327; *De Peyster* v. *Pulver*, 3 *Barb.* 284; 2 *Parsons on Contracts*, 189, 190, 191, *and note k.*) Even in respect to real estate, where much more technical and artificial rules prevail, a breach of a condition subsequent terminates an estate less than a freehold, without a re-entry or any other act. (*Parmelee* v. *The Oswego &c. Co.*, 2 *Selden*, 74, 80.) 7. The rescission being once effective, a waiver thereof to restore the agreement, and the liabilities of parties thereunder, must, of necessity, be mutual; neither party could waive the rights acquired by the other. The findings settle the question that the defendants never recognized any right of the plaintiffs after the notice.

*James T. Brady,* for the respondents. I. This court will not examine into the questions of fact upon which the judge passed at special term. His findings as to them are conclusive.

II. Although the contract was made in Connecticut, yet it was proved that the courts of that state had never passed upon the question whether the privilege of a patentee to an extension could be assigned, or whether, if assigned, the benefit thereof would enure to the assignee. It was also proved that if such question did arise in Connecticut, it would be determined according to the adjudications of the federal courts.

III. It is well settled that a patentee may assign his inchoate, or imperfect right to an extension, so as to vest in the assignee the right to such extension and all its advantages. (*Wilson* v. *Rousseau,* 4 *Howard's U. S. Rep.* 646. *Clum* v. *Brewer,* 2 *Curtis, C. C. R.* 506.) This is in accordance with rules established in courts of this state. (*Field* v. *Mayor &c. of N. Y.* 2 *Seld.* 179.)

IV. There was no pretext for the charge of false representation against the plaintiffs. The written agreement contains no warranty of title to a renewal, or statement about the ownership of it, but simply a stipulation that if any renewal should be obtained "FOR OR BY" the plaintiffs, the defendants should have the benefit of it. The language thus used wholly excludes the idea that the plaintiffs absolutely owned a right to renewal. It expresses that the renewal might be obtained either "by" them, or "for" them. On this point see *Heath* v. *Twomey,* (1 *Dev. & Bat.* 315.)

V. But even if the alleged misrepresentation had been made, as claimed by the defendants, and were not true, this would not alter the case, because, 1. It was wholly immaterial in view of the contract as made. 2. It did not injure the defendants. They procured all which the plaintiffs agreed to give them. The extension was obtained, and it enured to the defendants' benefit. Fraud and injury must

concur to give the party alleging deception any claim in a court of justice. (*Upton* v. *Vail,* 6 *John.* 181. *Fisher* v. *N. Y. Com. Pleas,* 18 *Wend.* 608.)

VI. It was said on the trial that if the defendants had supposed that the plaintiffs had not the legal title to the extension, they would not have agreed to pay tariffs for the extended term. This is purely conjectural and speculative, and not the subject of any proof in the case. What the parties would have done in the supposed contingency no one has said, nor can say. If the defendants had not agreed to pay tariffs during the extended term, the plaintiffs might have refused to give a license. But this notion of the defendants is founded on an error noticed in the next point.

VII. There is no warrant for the argument that the defendants could, in virtue of the extension by either the commissioner or congress, or under the act of 1836, have enjoyed the same right as was granted by the license applied to the extended term. 1. The obligation of the defendants to pay tariffs is measured as to time by the duration of the patent in its original or any extended term procured *for* or *by* the plaintiffs. This is a contract from which congress could not, and certainly would not, absolve the defendants. At all events, the court will not presume that congress intended, by a law retroactive in its nature, to take away, without compensation, a right vested in the plaintiffs under the contract of 1848. 2. The fourteen years' extension by congress saves and continues the seven years' extension by the commissioner, and does not confer any new right upon the defendants. The act of congress provides that "all persons now enjoying the lawful use of the said invented machine, or any part thereof so patented, and the purchaser of any such machine, or any part thereof, may continue to use the same notwithstanding the provisions of this act." This is in analogy with the law of 1836, which treats the mere purchaser of a patented machine as entitled to use it during the extended term, as he must have been presumed to pay for the purchase in the

price of the machine.   But it has no application to a licensee who, having made a contract for the right to use, can only use according to the right.

VIII.  There was no revocation or rescission of the license, and so it was held as matter of fact and law at the special term.   The notice of August 28, 1854, did not *ipso facto* annul or rescind the contract, nor work a forfeiture.   Even if it had, the plaintiffs might waive or excuse the forfeiture. (1 *Pars. on Cont.* 427.)   1. That the plaintiffs waived their objection and continued the agreement is proved by four directors of the plaintiffs, viz: Olmstead, Rowley, Bishop and Curtis.   Judge Butler's testimony, supposed to have a contrary bearing, is unimportant.   But if there be a conflict of proof on this question of fact, the decision at special term is final.   2. The letter from the defendants to the plaintiffs, 11th September, 1854, enclosing the note and account, and which the plaintiffs returned, was, as Judge Butler proves, sent merely to test the seriousness of the plaintiffs in their notice of August 28, 1854, and not as a consent to revocation.   3. If the defendants had designed to terminate the contract, they should and would have sent account and payment for tariffs up to the 11th September, 1854, or at least to August 28, the date of the notice, instead of only to July 1.   4. When the parties were treating for a compromise, Mr. Rowley swears expressly that the license was treated on all hands as subsisting, and the defendants proposed to pay an extra tariff if the clause in the license were altered, which prohibited it being transferred.   Mr. Olmstead, after 24th September, 1857, called on Mr. Bissell, one of the defendants, who gave him an account of the goods made under the agreement to that date, and who said that the defendants would be willing to pay up if they could settle another difficulty between them which had arisen out of the manufacture of rough surfaced cloth.

IX.  It will thus be seen that the defendants, after having enjoyed without hindrance all the rights the plaintiffs ever

agreed to give them, are endeavoring to avoid paying what they agreed to pay, on various technical and unjust pretexts, none of which should find favor any where. It was suggested that if the plaintiffs had no right to grant the extension there was no consideration for the agreement to pay tariff during the extended term. There was no grant or attempt to grant an extension, but a stipulation that the defendants might use a patent during any extension procured for or by the plaintiffs. And what is entirely conclusive on this subject, does away with any idea of fraud, and meets the entire defense, is the fact that before the expiration of the first patent the plaintiffs obtained a perfect title to the inchoate right to the extension, and afterwards on the 5th of April, 1854, to both of the extensions, and the re-issue by the government was to the plaintiffs.

*By the Court*, CLERKE, J. Although we are favored with a very voluminous brief from one of the defendants, in addition to the points presented by the defendants' counsel on the argument, I think the decision of this case demands very few words, and no considerable length of time.

In the agreement made on the 28th December, 1848, the parties to it stipulate that " the party of the second part (the defendants) may have and enjoy the right, mentioned under the patent, for and during the unexpired term of said patent, and for and during the term for which the same shall be renewed, if a renewal thereof should be obtained for or by the said party of the first part. The party of the second part, in consideration thereof, covenant and agree with the party of the first part (the plaintiffs) that they will pay or cause to be paid, to the party of the first part, the sum of one cent for each and every yard of cloth so made and manufactured by them, under and by virtue of the agreement, on the first days of January and July in each and every year " during the term or terms aforesaid." What term or terms aforesaid ? The parties themselves in the preceding part of the agreement un-

Union Manufacturing Company *v.* Lounsbury.

equivocally tell us : for and during the unexpired term of the patent, and for and during the term for which the same shall be renewed, if a renewal thereof shall be obtained, for or by the said party of the first part.   The first term had only two years unexpired when the agreement was made.   It expired accordingly in 1850, and the patent was, on the 21st October of that year, renewed for the term of seven years, and in 1854 the patent was extended by act of congress, for fourteen years longer from that date ; both extensions being duly assigned to the plaintiffs, and obtained for them.   The defendants, however, insist that, as the act of congress of July 4, 1836, provides that the benefit of such renewal shall extend to assignees and grantees of the right to use the thing patented, to the extent of their respective interests therein, and, as the act of 1854, extending the patent for fourteen years longer, has a similar provision, that they had the right to use it after the expiration of the first term without paying any compensation for its use to the plaintiffs.   In short, they say, for it amounts to this, that by virtue of these acts, they are absolved from their solemn promise to pay a certain consideration for the use of this right—a promise by the express terms of the agreement to pay this consideration—not only during the unexpired term, but for and during the term for which the same should be renewed.   Besides, I think it would be rather an extravagant conjecture to suppose that congress intended, even if they had the power, to absolve them from this promise. Our national as well as state legislatures have heretofore regarded contracts as inviolable.

The notice of August 28, 1854, did not *ipso facto* annul the contract, and the finding of the special term is correct on this point.

We see no reason for disturbing any of the findings either of law or fact.

The judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, May 2, 1864. *Leonard, Clerke* and *Geo. G. Barnard,* Justices.]